STATE OF CONNECTICUT *v.* STEVEN WATERMAN
(SC 16936)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued April 17—officially released June 24, 2003

*Laila M. Ghabrial*, assistant public defender, with whom was *James B. Streeto*, assistant public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Thomas Garcia*, assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The principal issue on appeal is whether the trial court properly exercised jurisdiction when, weeks after judgment had been rendered, and after the execution of the judgment had begun, the court made a factual finding and advised the defendant of the mandatory sex offender registration requirements pursuant to General Statutes § 54-251,[1] a provision in the statu-

---

[1] General Statutes § 54-251 (a) provides in relevant part: "Any person who has been convicted or found not guilty by reason of mental disease or defect of a criminal offense against a victim who is a minor or a nonviolent sexual offense, and is released into the community on or after October 1, 1998, shall, within three days following such release, and whether or not such person's place of residence is in this state, register such person's name, identifying factors, criminal history record and residence address with the

tory scheme commonly referred to as "Megan's Law." See General Statutes § 54-250 et seq. On April 6, 2001, following a jury trial, the defendant was convicted of one count of public indecency in violation of General Statutes § 53a-186 (a) (2),[2] and acquitted of two counts of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21.[3] On May 8, 2001, the trial court sentenced the defendant, in accordance with the verdict, to six months imprisonment, execution suspended, and two years probation that included special conditions. The defendant was required, inter alia: to admit himself voluntarily to a residential treatment program at the Connecticut Valley Hospital for eight months; to avoid any contact with residents of the Gray Lodge, a residential treatment center and shelter for troubled adolescent females in Hartford; to submit to psychological and substance abuse evaluation and treatment; and to submit to random urinalysis. Thereafter, on June 6, 2001, the trial court made a factual finding that the victims of the offense for which the defendant had been convicted were minors and advised the defendant of

Commissioner of Public Safety, on such forms and in such locations as the commissioner shall direct, and shall maintain such registration for ten years except that any person who has one or more prior convictions of any such offense or who is convicted of a violation of subdivision (2) of subsection (a) of section 53a-70 shall maintain such registration for life. . . ."

[2] General Statutes § 53a-186 (a) provides: "A person is guilty of public indecency when he performs any of the following acts in a public place: (1) An act of sexual intercourse as defined in subdivision (2) of section 53a-65; or (2) a lewd exposure of the body with intent to arouse or to satisfy the sexual desire of the person; or (3) a lewd fondling or caress of the body of another person. For purposes of this section, 'public place' means any place where the conduct may reasonably be expected to be viewed by others."

[3] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

the mandatory requirement, pursuant to §§ 54-250 (2)[4] and 54-251, that he register as a sex offender for a period of ten years.

The defendant thereafter appealed from the judgment of the trial court to the Appellate Court, challenging the trial court's jurisdiction to make the factual finding and to advise the defendant of the registration requirement several weeks after judgment had entered and after execution of the judgment had begun. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We conclude that the trial court properly exercised jurisdiction when, pursuant to § 54-251, it found that the victims of the defendant's offense were minors and advised the defendant that he was required to register as a sex offender. Accordingly, we affirm the trial court's judgment.

The jury reasonably could have found the following facts. On June 10, 2000, the victims, two female residents of Gray Lodge, respectively thirteen and fourteen years old, were socializing inside the lounge area of the facility when they noticed a shabbily dressed black male with an unkempt Afro hair style enter the facility's private rear yard. The man, dressed in dirty khaki pants and a red shirt, walked near an adjacent abandoned building, dropped his pants and began to masturbate in full view of the victims and other residents. They were able to see the man through the rear window in the lounge, which was large and nearly wall-length. The residents notified several staff members of the facility who rushed to the lounge, where they also witnessed the man masturbating. One staff member telephoned

---

[4] General Statutes § 54-250 (2) provides in relevant part: " 'Criminal offense against a victim who is a minor' means . . . (B) a violation of section 53a-92, 53a-92a, 53a-94, 53a-94a, 53a-95, 53a-96 or 53a-186, provided the court makes a finding that, at the time of the offense, the victim was under eighteen years of age . . . ."

the police and provided a description of the intruder. After approximately five minutes, the man pulled up his pants and exited the Gray Lodge yard. Moments later, he emerged from the grounds of the buildings adjacent to Gray Lodge and began to walk away from the facility, at which time the police arrived and detained him for identification by three staff members who had observed him from the window.

At trial, the three staff members identified the defendant as the man they had observed in the Gray Lodge rear yard. Although the victims testified, the state never asked them to identify the defendant at trial. The defendant claimed to have been a victim of misidentification. Additionally, he claimed that there had been no evidence as to whether the victims' morals actually had been impaired by the alleged conduct. See footnote 3 of this opinion. The jury returned a verdict of guilty on the one count of public indecency and not guilty on the two counts of risk of injury to a child.

Following the judgment of conviction of public indecency and the imposition of sentence, the trial court, sua sponte, convened a hearing to address the sex offender registry requirements of § 54-251. The defendant objected, claiming that the court lacked jurisdiction to make the requisite factual finding. Specifically, he claimed that, pursuant to *State* v. *Luzietti*, 230 Conn. 427, 646 A.2d 85 (1994),[5] the trial court could not open or vacate the judgment. The trial court rejected that claim, made the factual finding that, at the time of the offense, the victims were under the age of eighteen and advised the defendant of the mandatory registration requirement for a ten year period. This appeal followed.

The defendant claims that the trial court did not have jurisdiction to make the factual finding necessary to

---

[5] In *State* v. *Luzietti*, supra, 230 Conn. 432, this court concluded that the trial court lacked jurisdiction to grant the defendant's motion for a judgment of acquittal six weeks after the defendant had begun serving his sentence.

trigger his registration as a sex offender because he already had begun to serve his sentence. Specifically, he contends that the registration requirement was a *punitive sanction* "constitut[ing] a substantive change in the judgment," and that, in the absence of an express legislative grant of continuing jurisdiction, once he had begun serving his sentence, the court no longer could make the factual finding that subjected him to the sex offender registration requirements pursuant to § 54-251. The state responds that the trial court did not open or correct the defendant's sentence; it merely effectuated the regulatory purpose of Megan's Law. In other words, the state contends that the defendant's *sentence* was not affected by the trial court's determination that he must comply with the statute. It notes that Megan's Law is neither a sentence enhancement statute, nor a statute prescribing a sentencing factor. *State* v. *Pierce,* 69 Conn. App. 516, 530, 794 A.2d 1123, cert. granted, 261 Conn. 914, 806 A.2d 1056 (2002). The state further asserts that the registration requirement in this case was not intended as a punitive measure; *State* v. *Kelly,* 256 Conn. 23, 90–95, 770 A.2d 908 (2001); but, rather, was a regulatory requirement over which the trial court had no discretion. Therefore, according to the state, the court's imposition of the requirement was ministerial in nature and had no effect on the defendant's sentence. We agree with the state. We conclude that the registration requirement of Megan's Law, rather than being a part of the criminal judgment of conviction, is, instead, a separate regulatory incident of that judgment.[6] Therefore, the trial court did not lose jurisdiction to implement that regulatory incident after the defendant began to serve the sentence under that criminal judgment.

---

[6] It is axiomatic that, in a criminal case, the sentence imposed by the court constitutes the judgment of conviction. *State* v. *Seravalli,* 189 Conn. 201, 205, 455 A.2d 852, cert. dismissed, 461 U.S. 920, 103 S. Ct. 2076, 77 L. Ed. 2d 291 (1983).

We begin with a brief discussion—first, of the pertinent reporting statutes, and second, of the court's jurisdiction to impose them in the context of this case. As we noted previously, § 54-251 (a) is one provision of Megan's Law, which is codified in chapter 969 of the General Statutes, the intent of which "was to alert the public by identifying potential sexual offender recidivists when necessary for public safety." *State* v. *Pierce*, supra, 69 Conn. App. 522; see *State* v. *Kelly*, supra, 256 Conn. 90–91. "The seriousness of the harm that sex offenders' actions cause to society and the perception, supported by some data, that such offenders have a greater probability of recidivism than other offenders have recently combined to prompt the enactment of numerous laws across the country directed specifically toward persons convicted of crimes involving sexual conduct." *Doe* v. *Pataki*, 120 F.3d 1263, 1266 (2d Cir. 1997). Chapter 969, entitled "Registration of Sexual Offenders"; General statutes § 54-250 et seq.; is such an enactment. Prior to the enactment of Megan's Law, the law imposed a registration requirement only on specified sex offenders who were convicted on or after January 1, 1995. See General Statutes (Rev. to 1995) § 54-102r. The law was broadened in 1997 to include *all* convicted sex offenders. See Public Acts 1997, No. 97-183, § 1; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1997 Sess., pp. 1230–31, testimony of Senators Kevin B. Sullivan and George C. Jepsen. The current statutory scheme imposes registration requirements based on four classifications: (1) the victims are minors or the sexual offenses are nonviolent; General Statutes § 54-251; (2) the sexual offenses are violent; General Statutes § 54-252; (3) the sexual offense was committed in another jurisdiction; General Statutes § 54-253; or (4) a felony was committed for a sexual purpose. See General Statutes § 54-254. Only under the last classification is the trial court given discretion

whether to impose the registration requirement. See General Statutes § 54-254 (a).

Because the defendant claims that, under the circumstances of this case, the trial court lacked jurisdiction to make the factual finding that triggered the sex offender registration requirement after he had begun execution of his sentence, we next address the issue of jurisdiction. "The Superior Court is a constitutional court of general jurisdiction. *State* v. *Carey*, 222 Conn. 299, 305–306, 610 A.2d 1147 (1992) [on appeal after remand, 228 Conn. 487, 636 A.2d 840 (1994)]. In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law. *Cichy* v. *Kostyk*, 143 Conn. 688, 690, 125 A.2d 483 (1956). It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. *State* v. *Walzer*, 208 Conn. 420, 426–28, 545 A.2d 559 (1988); *State* v. *Nardini*, 187 Conn. 109, 123, 445 A.2d 304 (1982); *State* v. *Pallotti*, 119 Conn. 70, 74, 174 A. 74 (1934); *State* v. *Vaughan*, 71 Conn. 457, 460–61, 42 A. 640 (1899)." *State* v. *Luzietti*, supra, 230 Conn. 431–32.

"The jurisdiction of the sentencing court terminates when the sentence is put into effect, and that court may no longer take any action *affecting the sentence* unless it has been expressly authorized to act." (Emphasis added; internal quotation marks omitted.) *State* v. *Pagan*, 75 Conn. App. 423, 429, 816 A.2d 635 (2003); see *State* v. *Walzer*, supra, 208 Conn. 424–25. The legislature has granted the trial courts continuing jurisdiction to act on their judgments after the commencement of sentence under a limited number of circumstances. See, e.g., General Statutes §§ 53a-29 through 53a-34 (permitting trial court to modify terms of probation after sentence imposed); General Statutes § 52-270 (granting jurisdiction to trial court to hear petition for new trial

after execution of original sentence commenced); General Statutes § 53a-39 (allowing trial court to modify sentences of less than three years provided hearing held and good cause shown).

With this background in mind, we turn to the present case. It is undisputed that public indecency, as prescribed by § 53a-186, is an offense that, if committed against a victim under eighteen years of age, is subject to the sex offender reporting requirements of § 54-251. See General Statutes § 54-250 (2) (B). Indeed, the registration requirement is mandatory for any defendant who satisfies that statutory criteria. Compare General Statutes § 54-251 with General Statutes § 54-254. The issue on appeal, therefore, is whether the trial court acted without jurisdiction in making the necessary finding and articulating the registration requirements weeks after the defendant had commenced service of his sentence.

We begin and end with the question of whether the requirement of registration in this case was punitive or penal in nature, or whether it was merely a regulatory requirement.[7] We do not write on a clean slate in addressing this question. In *State* v. *Kelly*, supra, 256 Conn. 94, this court determined that Megan's Law is a nonpunitive statutory scheme. In reaching that conclusion, we relied extensively on the analysis by the United States Court of Appeals for the Second Circuit in *Doe* v. *Pataki*, supra, 120 F.3d 1274–75, in which that court applied a two part test in deciding whether the New York version of Megan's Law was penal in nature. *State* v. *Kelly*, supra, 256 Conn. 92–94. In *Pataki*, under the first part of the test, the court examined whether the legislature had intended the statute to be criminal or

---

[7] The defendant contends that, because the sentence was not illegal, the authority granted to the trial court to correct an illegal sentence under Practice Book § 43-22 does not apply. The state does not disagree and therefore does not defend the trial court's actions on that ground.

civil, in other words, "punitive in law." *Doe* v. *Pataki*, supra, 1276–78. Under the second part of the test, the *Pataki* court considered whether, even if not punitive in law, the statute was nevertheless "punitive in fact," that is, whether the statute was so punitive in fact that it could not be seen as civil in nature. Id., 1278–84. Applying this two part test to our Megan's Law, we expressly decided in *State* v. *Kelly*, supra, 92–94, that the registration requirement at issue in the present case was not punitive.

Despite having decided that issue, recent federal court decisions underscoring the vitality of that conclusion warrant further discussion. One such case of particular significance involving Connecticut's version of Megan's Law was issued shortly before our decision in *Kelly* and began in the United States District Court for the District of Connecticut with a claim for, inter alia, injunctive relief by defendants who claimed that Megan's Law violated the due process clause and the ex post facto clause of the federal constitution. See *Doe* v. *Lee*, 132 F. Sup. 2d 57 (D. Conn.), aff'd sub nom. *Doe* v. *Dept. of Public Safety ex rel. Lee*, 271 F.3d 38 (2d Cir. 2001), rev'd sub nom. *Dept. of Public Safety* v. *Doe*, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003). The District Court determined that our statutory scheme violated the due process clause, but did not violate the ex post facto clause. Id., 59. In deciding that the statutory scheme did not violate the ex post facto clause, the court applied the two part *Pataki* test, concluding that "there is nothing in the text [of the Connecticut law] that suggests the legislature sought to punish sex offenders rather than protect public safety." Id., 67. In comparing our version of Megan's Law to the New York version, which the Second Circuit previously had found nonpunitive in *Pataki*, the District Court concluded that the "differences, taken separately or cumulatively and viewed in light of the [Connecticut] legislative history

and the structural features indicating a regulatory purpose, do not demonstrate that the legislature acted with punitive intent" in adopting the law. Id., 68.

With respect to the second part of the *Pataki* test—whether, although regulatory in intent, the registry law is *punitive in fact*—the District Court determined that only "the clearest proof" would suffice to override the stated intent and transform what has been denominated a civil remedy into a criminal penalty. Id. In making the punitive in fact determination, the District Court concluded that, although the registration requirement applies to behavior that is already a crime, and there is a perception of "excessiveness" because the information is disseminated via the Internet, these factors, either alone or in conjunction, do not establish by the "clearest evidence" that the law is punitive in fact. Id., 69.

On appeal, the United States Court of Appeals for the Second Circuit affirmed the District Court's judgment enjoining the state from disseminating sex offender registry information on due process grounds.[8] *Doe* v. *Dept.*

---

[8] In reliance on the decision by the Second Circuit Court of Appeals, the defendant in the present case also claimed on appeal that, even if the trial court properly had exercised jurisdiction, the court nevertheless had violated his due process rights by making factual findings without affording him an appropriate hearing. Specifically, the defendant claimed that the trial court was required to hold a hearing to determine: (1) whether he posed a risk of future dangerousness; and (2) whether there were minors present at the time of the crime. At oral argument before this court, the defendant acknowledged that recent decisions by the United States Supreme Court in *Smith* v. *Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003), and *Dept. of Public Safety* v. *Doe*, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003), control our resolution of this issue. Because, as we explain subsequently in this opinion, in *Dept. of Public Safety* v. *Doe*, supra, 8–9, the United States Supreme Court held that due process does not require the opportunity to prove a fact that is not material to the state's statutory scheme—in specific, that the defendant is not currently dangerous—no hearing on that issue was required in the present case. Accordingly, the defendant's claim to the contrary is rejected.

With regard to his assertion that the age of the victims was a material factor and that the trial court was required to hold a hearing before making

*of Public Safety ex rel. Lee*, 271 F.3d 38, 61 (2d Cir. 2001). Although the court did not decide whether the statutory scheme similarly violated the ex post facto clause, it nevertheless expressly cited with approval the District Court's reasoning with respect to the first part of the *Pataki* test. Id., 60.[9] The decision by the Second Circuit upholding the injunction against enforcing our version of Megan's Law thereafter was appealed to the United States Supreme Court. The Supreme Court, focusing solely on the due process question, reversed the Second Circuit's decision and concluded that due process does not require giving the defendant the opportunity to prove a fact that is not material to the state's statutory scheme—in that case, specifically, that the defendant is not currently dangerous. *Dept. of Public Safety* v. *Doe*, 538 U.S. 1, 8–9, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003).

---

the factual finding necessary to trigger the reporting requirements, we similarly reject that claim under the facts of this case. The trial court's conclusion that the present case triggered § 54-251 turned on the crime for which the defendant had been convicted, specifically, public indecency in violation of § 53a-186, and the fact that the defendant's act had been committed in the presence of a minor. That the victims in this case were minors was undisputed. Moreover, in addition to the victims' own testimony as to their ages, other facts are indicative of the victims status as minors—both victims testified that they were residents of Gray Lodge, a facility for troubled *adolescent* females, and a guardian ad litem had been appointed for the victims. Based on all of these undisputed facts, it is not surprising that the defendant did not challenge the trial court's finding that the victims were minors. Finally, even were we to assume that the trial court was required to hold a hearing before making the factual finding that triggered the reporting requirements pursuant to § 54-251, because the injury to the defendant's reputation constituted a deprivation of a liberty interest; see *Goss* v. *Lopez*, 419 U.S. 565, 576, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); under the facts of this case, the defendant had the opportunity to contest the trial court's factual finding at the time the trial court advised him of the reporting requirements, but chose not to do so.

[9] The Second Circuit Court of Appeals expressly did not decide whether, because of the undifferentiated nature of Connecticut's Megan's Law, the statutory scheme as written is punitive in fact under an ex post facto analysis. *Doe* v. *Dept. of Public Safety ex rel. Lee*, supra, 271 F.3d 61.

That same day, the Supreme Court also issued its decision in a case challenging the decision of the Ninth Circuit Court of Appeals that had enjoined Alaska from enforcing that state's version of Megan's Law. See *Smith* v. *Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003). In reversing the Ninth Circuit's decision on ex post facto grounds, the Supreme Court applied reasoning that closely resembled that which the federal District Court had applied in *Doe* v. *Lee*, supra, 132 F. Sup. 2d 57, in concluding that Connecticut's version of Megan's Law is nonpunitive. Specifically, the Supreme Court examined the extensive registration and notification requirements under Alaska's law,[10] considered those requirements under a number of factors,[11] and

[10] The Supreme Court noted that the Alaska law provides: "If the offender was convicted of a single, nonaggravated sex crime, he must provide annual verification of the submitted information for [fifteen] years. [Alaska Stat.] §§ 12.63.010 (d) (1), 12.63.020 (a) (2) [2000]. If he was convicted of an aggravated sex offense or of two or more sex offenses, he must register for life and verify the information quarterly. [Alaska Stat.] §§ 12.63.010 (d) (2), 12.63.020 (a) (1) [2000]. The offender must notify his local police department if he moves. [Alaska Stat.] § 12.63.010 (c) [2000]. A sex offender who knowingly fails to comply with the [Alaska Sex Offender Registration] Act is subject to criminal prosecution. [Alaska Stat.] §§ 11.56.835, 11.56.840 [2000].

"The information is forwarded to the Alaska Department of Public Safety, which maintains a central registry of sex offenders. [Alaska Stat.] § 18.65.087 (a) [2000]. Some of the data, such as fingerprints, driver's license number, anticipated change of address, and whether the offender has had medical treatment afterwards, is kept confidential. [Alaska Stat.] §§ 12.63.010 (b), 18.65.087 (b) [2000]. The following information is made available to the public: 'the sex offender's or child kidnapper's name, aliases, address, photograph, physical description, description . . . license [and] identification numbers of motor vehicles, place of employment, date of birth, crime for which convicted, date of conviction, place and court of conviction, length and conditions of sentence, and a statement as to whether the offender or kidnapper is in compliance with [the update] requirements . . . or cannot be located.' [Alaska Stat.] § 18.65.087 (b) [2000]. The [Alaska Sex Offender Registration] Act does not specify the means by which the registry information must be made public. Alaska has chosen to make most of the nonconfidential information available on the Internet." *Smith* v. *Doe*, supra, 538 U.S. 90–91.

[11] The factors deemed most relevant to the Supreme Court's analysis were "whether, in its necessary operation, the regulatory scheme: has been

concluded that the defendants had not demonstrated that the effects of the law negated the intent to create what was otherwise a civil, nonpunitive regime. *Smith* v. *Doe*, supra, 92–106.

With this background in mind, we turn to, and reject, the defendant's claim in the present case that the trial court lost jurisdiction over the matter by failing to make the factual finding that activated the registration requirement at the time of sentencing. Although the defendant conceded at oral argument before this court that *Smith* v. *Doe*, supra, 538 U.S. 84, and *Doe* v. *Dept. of Public Safety ex rel. Lee*, supra, 271 F.3d 38, govern his due process claim; see footnote 8 of this opinion; he does not acknowledge that those cases also are dispositive of his jurisdictional claim, despite the fact that the jurisdictional claim is predicated *entirely* on the punitive characterization of the registry requirements that those cases reject. Because these regulatory requirements are ministerial, the trial court did not have to revisit the sentence in order to inform the defendant of his obligations. Indeed, making the factual finding and informing the defendant of these requirements pursuant to § 54-251 did not necessitate any modification, opening or correction of the sentence. In short, the defendant's sentence was not affected by the trial court's factual finding and advisement that he must comply with the statute. Rather, the court merely was effectuating the regulatory purpose of Megan's Law.[12]

regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Smith* v. *Doe*, supra, 538 U.S. 97.

[12] Although trial courts would be well-advised to inform defendants of the sex offender registration requirements at the time of sentencing, because the registration requirements are not effective until the defendant is released, it is not clear, and we do not decide, whether, when there are no facts to be found; see, e.g., General Statutes § 54-251 (b) through (d); the department of probation has the authority to inform the defendant of the mandatory reporting requirements under the statute.

As the Appellate Court noted in *State* v. *Pierce*, supra, 69 Conn. App. 529, "[i]n this case, we are not dealing with a sentencing factor or a sentencing enhancement, but with a finding to be made after conviction that has no effect until after a defendant's sentence has been served." Accordingly, pursuant to § 54-250 (2) (B); see footnote 4 of this opinion; the trial court retains jurisdiction, even after judgment is rendered, with respect to making the necessary finding to trigger the registration requirement as part of its implementation of this regulatory incident of the judgment.

The judgment is affirmed.

In this opinion the other justices concurred.