STATE OF CONNECTICUT *v.* ANONYMOUS ET AL.
(1976–9)*

COURT OF COMMON PLEAS

* Thus entitled, in view of General Statutes § 54-90.

Jacobs, J. The defendants have moved to dismiss the informations in these cases charging each of them with the crime of disorderly conduct in violation of § 53a-182 of the penal code. Those motions, pursuant to § 499A of the Practice Book, seek dismissal on the ground that there is insufficient evidence to justify bringing the defendants to trial. The state has stipulated to the facts which constituted its position that the crime of disorderly conduct was committed in each case. Hence, the question presented for decision is whether as a matter of law probable cause exists to support the state's claim that the statute was violated.

The three defendants were selling newspapers and soliciting support for their radical political party at the parking lot of a shopping plaza. In the course of that activity, one of the three defendants attempted to sell a paper to the complainant. The complainant declined, but the solicitor repeated his offer several times. Finally, disturbed by the idea of "communist" propaganda being sold without a license, he telephoned the local police department.

When the police arrived, an officer, on information furnished by the complainant, concluded that the defendants were bothering people and ordered them to leave. The defendants stated they had a right to be there selling papers and refused to leave.[1] They also engaged in political debate with the officers on the proper function of the police in our society; the officer characterized that as an attempt to confuse him. In the course of that discussion, a crowd of unspecified size had gathered. The officer concluded that the defendants were "making a scene." With the aid of a sergeant he then placed the three defendants under arrest on a charge of breach of the peace in violation of § 53a-181 of our penal code. A substitute information was thereafter filed reducing the charge to disorderly conduct. § 53a-182 (a).

In deciding whether probable cause exists to believe that the conduct of the defendants violated the statute, the constitutional protection of free speech and assembly must be considered together with the text of the statute. While it is obvious that the state may act to prevent or punish an immediate threat to public safety, it is equally obvious "that a State may not unduly suppress free communication of views . . . under the guise of conserving desirable conditions." *Cantwell* v. *Connecticut*, 310 U.S. 296, 308.

The balancing of the state's interest in public order and safety as against the defendants' interest in being free of undue state interference takes on an added dimension when the conduct in question encompasses expression of political views. As the United States Supreme Court has stated: "When First Amendment rights are involved, we look even more closely lest, under the guise of regulating con-

---

[1] See the defendants' exhibit 4, in which charges for soliciting at the shopping plaza were dismissed.

duct that is reachable by the police power, freedom of speech or of the press suffer." *Ashton* v. *Kentucky,* 384 U.S. 195, 200.

The bill of particulars filed against each of the three defendants charges a violation of § 53a-182 (a), subsections (1), (2), (5) and (6). Under subsection (1), the defendants are alleged to have engaged "in violent, tumultuous or threatening behavior." There is nothing in the record, however, to substantiate that charge. There was no violence nor any threats of violence, and tumultuous behavior requires more than aggressive solicitation.

The cases upholding convictions or arrests on probable cause require much more extreme behavior than appears in the cases at bar. For example, in *State* v. *Sweeney,* 157 Conn. 485, the court held valid an arrest for disorderly conduct under § 53-175 (since repealed) where the defendant, during the course of questioning by police officers, began to shout loudly at 2 a.m. in downtown Waterbury. Not only is there no allegation of "shouting" in these cases, but also loudness of speech at 2 a.m. is different from "loudness" at 4 p.m. Similarly, in *State* v. *Avnayim,* 24 Conn. Sup. 7, 1 Conn. Cir. Ct. 348, a conviction for disorderly conduct was upheld where the defendant kept on shouting in a belligerent manner after a warning to quiet down or face arrest.

It is further alleged that the defendants "by offensive or disorderly conduct, annoyed or interfered with another person" in violation of § 53a-182 (a) (2). In that connection, this court is presented with the complainant's statement that he was bothered by one of the three defendants. It is clear, however, that what annoyed or offended him was the suggestion of "communism" and its aggres-

sive proselytization. "The Fourteenth Amendment does not permit a State to make criminal the peaceful expression of unpopular views." *Edwards* v. *South Carolina,* 372 U.S. 229, 237.

A factual situation similar to the cases at bar is the landmark case of *Cantwell* v. *Connecticut,* 310 U.S. 296. In that case, Cantwell, a member of the Jehovah's Witnesses, accosted several people on a public street with a recorded speech insulting their religion. In reversing Cantwell's conviction for breach of the peace, the United States Supreme Court stated: "We find in the instant case no assault or threatening of bodily harm, no truculent bearing, no intentional discourtesy, no personal abuse. On the contrary, we find only an effort to persuade a willing listener to buy a book or to contribute money in the interest of what Cantwell, however misguided others may think him, conceived to be true religion." *Cantwell* v. *Connecticut,* supra, 310.

The foregoing quotation would be a fair summation of the cases at bar except for the complainant's claim that he was not a willing listener; that one of the defendants persisted after he had expressed disinterest in his cause. That however, without more, does not constitute criminal conduct. The complainant had rolled down his window to talk to the defendant; yet, he never rolled it back up to signal an end of the conversation. In fact, he persisted in trading comments with the defendant until he actually called the police.

The third allegation of the bill of particulars is that the defendants obstructed "vehicular or pedestrian traffic." § 53a-182 (a) (5). The only support for that allegation is the complainant's statement that one of the defendants "wouldn't move from the door of my car, so I had to force my way

out." The court does not consider that that statement establishes a violation of that subsection by any fair construction of the statute. "Traffic" refers to the flow of pedestrians or vehicles along a street or highway; it does not apply to a single individual getting out of his car. That construction finds support in *Seymour* v. *Seymour,* 56 Misc. 2d 546 (N.Y.), where the court ruled that obstructing traffic did not apply to a man running his wife's car off the road.[2] The New York court held that to violate the statute one must obstruct traffic for extended periods to the inconvenience of the public. *Seymour* v. *Seymour,* supra, 548. More than mere inconvenience to pedestrians is required. See *People* v. *Carcel,* 3 N.Y.2d 327; *People* v. *Losinger,* 63 Misc. 2d 577, 579 (N.Y.).

The fourth and final allegation in the state's bill of particulars charges that the defendants "congregated with other persons in a public place and refused to comply with a reasonable official request or order to disperse," a violation of § 53a-182 (a) (6). As the drafters realized, a "reasonable official request must be a lawful one; that is, it must not be in violation of the defendant's right or privilege to remain." Section 53a-182, Commission Comment (1971).

The court's rulings do not mean that the defendants could not, under other circumstances, be legally ordered to disperse; the court's findings are limited to the factual situation in the present cases. If the defendants were not violating the law when they were first ordered to move, the objective situation created by them must have at the least posed an

---

[2] The statute, New York Penal Law § 240.20 (5) (McKinney 1967) is identical to § 53a-182 (a) (5) of the General Statutes. Our statute is derived in large part from the New York statute. See Gill, "Breach of the Peace, Disorderly Conduct and Harassment," Reference Manual, Conn. Penal Code (1971) 13:25.

imminent threat to the public peace. That interpretation is fortified by New York's construction of a similar statute.[3] For an order to disperse to be lawful, the actor's prior conduct must " 'at least be such that a breach of the peace has become imminent or might reasonably be expected or intended to flow from such conduct.' " *People* v. *Hill,* 60 Misc. 2d 277, 279 (N.Y.).

In the present cases, there has been no showing that a disruption was imminent. In fact, the three defendants did not even "congregate" until the police brought them together to order dispersal. Prior to the arrival of the police, the defendants were merely exercising their constitutional right to express their views and promote their cause. Those who are engaged in the lawful expression of their constitutional rights may not be deprived of those rights because they refused to obey an order to disperse. *People* v. *Losinger,* supra; *Edwards* v. *South Carolina,* supra.

The court holds that in the present cases, it is not consonant with our constitutional strictures to find that the expression of views and solicitation of sales created an unjustifiable risk either to the public order or private right.

For the reasons stated herein, the motion to dismiss in each case is granted.

---

[3] New York Penal Law § 240.20 (6) (McKinney 1967) is violated if one "congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse."