STATE OF CONNECTICUT *v.* ROBERT MUCKLE
(AC 28108)

STATE OF CONNECTICUT *v.* STANLEY SCOTT
(AC 28109)

STATE OF CONNECTICUT *v.* MARYANN SPRAGUE
(AC 28110)

Gruendel, Lavine and Stoughton, Js.

Argued January 7—officially released June 3, 2008

*Roger J. Frechette,* for the appellants (defendants).

*Leon F. Dalbec, Jr.,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *John P. Doyle, Jr.,* assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. Each of the defendants in these consolidated appeals, Robert Muckle, Stanley Scott and Maryann Sprague, was convicted, after a trial to the court, of disorderly conduct in violation of General Statutes § 53a-182 (a) (5) in connection with a demonstration at the Planned Parenthood of Connecticut (Planned Parenthood) facility in New Haven. On appeal, each of the defendants claims that the evidence was insufficient to establish that he or she either obstructed or intended to obstruct pedestrian traffic in violation of the statute. We affirm the judgments of the trial court.

These appeals arise out of events that transpired on July 9, 2005, when the defendants were on the sidewalk adjacent to Edwards Street near its intersection with Whitney Avenue in New Haven. The court found, in its oral decision, that "in the morning hours at or near . . . 345 Whitney Avenue in New Haven, [the defendants] by their physical presence, together with the presence of their numerous bulky signs, the carriages with signs placed on them, the bricks holding the carriage in place, and the location of the parties and the property within close proximity on the seven foot sidewalk, intended to cause inconvenience, annoyance or alarm by getting in the way of or blocking pedestrian traffic on the sidewalk of Edwards Street." The defendants were sentenced on October 3, 2006,[1] and these appeals followed.

---

[1] All of the defendants were sentenced to ninety days in the custody of the commissioner of correction, execution suspended. Muckle and Sprague were ordered to pay fines of $250 each, and Scott was ordered to pay a fine of $500. Muckle and Sprague each received a conditional discharge, requiring that they have no contact with Planned Parenthood, stay 100 yards away from any Planned Parenthood office in Connecticut, have no contact

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Damato*, 105 Conn. App. 335, 340–41, 937 A.2d 1232, cert. denied, 286 Conn. 920, 949 A.2d 481 (2008). "When there is conflicting evidence . . . it is the exclusive province of the court, as the trier of fact, to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Internal quotation marks omitted.) *Capp Industries, Inc.* v. *Schoenberg*, 104 Conn. App. 101, 116–17 n.11, 932 A.2d 453, cert. denied, 284 Conn. 941, 937 A.2d 696, 697 (2007). "Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Felder*, 95 Conn. App. 248, 263, 897 A.2d 614, cert. denied, 279 Conn. 905, 901 A.2d 1226 (2006). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of

with Planned Parenthood employees or visitors and have no new arrests. Scott received one year of probation subject to standard terms, plus he is to stay 100 yards away from any Planned Parenthood office in Connecticut, have no contact with Planned Parenthood employees or visitors, stay ten feet away from any motor vehicle approaching a Planned Parenthood office, make a $250 charitable contribution to the Crime Victims Compensation Fund within three months of sentencing and perform ten hours of community service each week for one year.

guilty." (Internal quotation marks omitted.) *State* v. *Lopez*, 280 Conn. 779, 809, 911 A.2d 1099 (2007). "In the absence of evidence to the contrary, [an appellate court] will not assume that a finding adverse to an appellant's case could only have been the product of a failure by the court to consider all of the evidence presented." *Capp Industries, Inc.* v. *Schoenberg*, supra, 117 n.11.

Following the presentation of evidence from September 5 through 7, 2006, the court rendered its decision orally on September 26, 2006. The court first recited the evidence that had been presented. The court heard testimony from Brian Donnelly, a New Haven police officer, and the defendants. The state also "introduced seventeen exhibits, including a video [from a stationary camera system employed by Planned Parenthood] that *partially depicted* the events of July 9, 2005,[2] thirteen posters ranging in size from four feet by five feet to two feet by two feet, an umbrella stroller measuring approximately three feet tall by one and one-half feet wide, a baby carriage measuring approximately three and one-half feet tall by two feet wide, and eight bricks, which were contained in the baby carriage. The defendants introduced three exhibits consisting of photographs." (Emphasis added.)

---

[2] The parties stipulated that the video depicted images captured by a motion detector system mounted on the Planned Parenthood building and that the time the images were captured as shown on the video was accurate as to minutes and seconds, but was "off" by one hour. The video camera does not record continuously, but only when it detects motion. There are therefore spaces over time in the video. In other words, the video contains seven minutes of imagery over the passage of twenty-five minutes of time. Donnelly testified that the camera's view encompassed a small portion of the sidewalk on either side of the driveway. It could not observe the full length of the sidewalk where the defendants had placed their signs, stroller and baby carriage. Notwithstanding that the video does not purport to portray all of the events as to which evidence was produced, the defendants argue that the seven minute video "proves with mathematical certainty that not only [was] there . . . no intent to cause inconvenience, annoyance or alarm, but there [was] absolutely no obstruction of pedestrian traffic."

The court made the following findings of fact, including, most significantly, that Donnelly was a credible witness and that the defendants were not. "[O]n July 9, 2005, in the morning hours at or near . . . 345 Whitney Avenue in New Haven, [the defendants] by their physical presence, together with the presence of their numerous bulky signs, the carriages with signs placed on them, the bricks holding the carriage in place, and the location of the parties and the property within close proximity on the seven foot sidewalk, intended to cause inconvenience, annoyance or alarm by getting in the way of or blocking pedestrian traffic on the sidewalk of Edwards Street.

"And [the court] further finds that by those aforesaid actions, the defendants created a risk of getting in the way of or blocking pedestrian traffic. The court finds that all three defendants were warned several times to move their persons and belongings so as not to impede pedestrian traffic on the sidewalk and that the defendants did not comply. The court further finds that three pedestrians were observed to step off the sidewalk and onto the adjacent grass because of the location of the defendants, their signs and carriages on the sidewalk. Therefore, the court finds that the state has proven beyond a reasonable doubt that each of the defendants is guilty of a violation of . . . General Statutes § 53a-182 (a) (5)."[3]

The substance of the defendants' claims on appeal is that there was insufficient evidence by which the court could have found them guilty of violating § 53a-182 (a) (5) because there was no credible evidence that any one of them obstructed pedestrian traffic and that the video contradicts the court's findings. Moreover,

[3] It does not escape our notice that the defendants failed at trial to move for a judgment of acquittal either after the state's case-in-chief or at the conclusion of evidence.

the defendants argue that there was no pedestrian traffic.[4] On the basis of our review of the testimony, the defendants' exhibits and the video, we conclude that there is evidence in the record to support the court's findings.

The finder of fact must find every element of the statute proven beyond a reasonable doubt to find the defendants guilty of the offense charged, but "each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [finder of fact] to conclude that a basic fact or an inferred fact is true, the [fact finder] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all of the evidence proves the defendants guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Martin*, 285 Conn. 135, 147–48, 939 A.2d 524 (2008).

"[I]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 155, 920 A.2d 236 (2007).

---

[4] The defendants stated the issue in their brief as: "Did the trial court err when it entered its oral judgment that the defendants were guilty beyond a reasonable doubt of violating . . . § 53a-182 (a) (5), which states [that] a person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, such person obstructs pedestrian traffic, but, however, as proven by state's exhibit one, the [video], which proves that there was not only no intention to obstruct pedestrian traffic, but [that] there was *no pedestrian traffic* to be obstructed, as there is not a scintilla of credible evidence that the defendants' obstructed pedestrian traffic?" (Emphasis in original.)

General Statutes § 53a-182 (a) provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . (5) obstructs vehicular or pedestrian traffic . . . ." "[T]o support a conviction for disorderly conduct, the defendant's predominant intent must be to cause inconvenience, annoyance or alarm, rather than to exercise his constitutional rights." *State* v. *Indrisano*, 228 Conn. 795, 809, 640 A.2d 986 (1994). "[T]he mens rea language of § 53a-182 (a) can be formulated more precisely as follows: the predominant intent is to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm. In order to sustain a conviction for disorderly conduct, the state must begin by demonstrating that the defendant had such a state of mind." Id., 810–11.

"[P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . Furthermore, [i]n [the] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . Indeed, direct evidence of the accused's state of mind is rarely available . . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . [A]ny such inference

cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence." (Internal quotation marks omitted.) *State* v. *Aloi*, 280 Conn. 824, 842–43, 911 A.2d 1086 (2007).

Our review of the evidence discloses that Donnelly testified that on July 9, 2005, he was familiar with Scott and Muckle. When he arrived at the scene in response to a complaint telephoned to the police department, Donnelly observed several protestors on the sidewalk as well as a number of signs. The defendants' signs, posters and placards were placed in evidence. The size of them varied from four feet by five feet to two feet by two feet. The photographic and video evidence demonstrated that the signs, stroller and baby carriage secured by bricks were on the sidewalk on Edwards Street adjacent to the Planned Parenthood building. Donnelly estimated that six times he asked the defendants, individually or as a group, not to block the sidewalk. He also testified that Scott stated that he had "a constitutional right to block the sidewalk and to protest." The court reasonably could have inferred on the basis of the size of the defendants' belongings and their position on the sidewalk that the defendants intended to cause inconvenience, annoyance and alarm or obstructed the sidewalk.[5]

With regard to the obstruction of pedestrian traffic, Donnelly testified that shortly after he arrived, he informed the defendants that they and their signs were obstructing the sidewalk completely, and that at one point, Scott and Sprague were holding signs standing side by side completely blocking the sidewalk. He also testified that several people could not physically pass

---

[5] The defendants did not file a motion for articulation; see Practice Book § 66-5; asking the court to clarify whether it found that they intended to cause inconvenience, annoyance or alarm and on what basis.

on the sidewalk because of where the defendants were standing. Deborah Camerota, a defense witness, testified that she saw the sidewalk blocked one time. Donnelly's testimony[6] and the photographic and video evidence provided a basis for the court to conclude that pedestrians walked off the sidewalk to get around the signs, stroller and baby carriage on the sidewalk. For these reasons, we conclude that there was sufficient evidence presented by the state to prove beyond a reasonable doubt that the defendants were in violation of § 53a-182 (a) (5).

The judgments are affirmed.

In this opinion GRUENDEL, J., concurred.

STOUGHTON, J., dissenting. In my view, the evidence and the inferences reasonably drawn therefrom do not support a conclusion that the defendants, Robert Muckle, Stanley Scott and Maryann Sprague, actually obstructed pedestrian traffic during their demonstration at the Planned Parenthood of Connecticut (Planned Parenthood) building in New Haven. Therefore, I respectfully dissent.

Officer Brian Donnelly of the New Haven police department testified that he saw three pedestrians approaching toward the area where the protesters were with their props and that these three pedestrians stepped off the sidewalk.[1] He further testified that he observed two of the three stop as they approached the

---

[6] Donnelly testified that he observed three people walk off the sidewalk onto the grass because they could not physically pass on the sidewalk. The defendants testified that they did not intend to block pedestrian traffic and that they did not block the sidewalk. The court found Donnelly's testimony to be more credible. In their brief, the defendants argue that pedestrian traffic was not blocked because there was no pedestrian traffic. The record does not support this claim.

[1] The state conceded at trial that no pedestrians were prevented from accessing the Planned Parenthood building.

area and step onto the grass adjoining the sidewalk. These two were never identified, and Donnelly did not know where they went. He testified that he thought that they stepped onto the grass because they could not proceed through the protestors along the sidewalk. That was never established, however, and Donnelly also testified that they may have simply stepped off the sidewalk and walked into the Planned Parenthood building. The record reveals that no other evidence regarding these two pedestrians was provided to the court. No evidence was presented indicating, for example, whether the two pedestrians were traveling together. More importantly, the record does not indicate the positioning of the defendants at the time when the two pedestrians stepped off the sidewalk. Thus, it is not clear which, if any, of the defendants were even blocking the sidewalk at the time that these pedestrians departed from it. It also is not clear whether any of the defendants noticed the two pedestrians.

The third and final pedestrian referenced by Donnelly, and relied on by the state, was a woman who was walking a dog. Donnelly testified that she continued along the sidewalk and stepped onto the grass with her dog when she reached the spot where Scott and Sprague were standing with some policemen. This episode is shown in a video from a stationary camera system employed by Planned Parenthood that depicted a portion of the events during the demonstration, which we have reviewed. The video is consistent with Donnelly's testimony of the event. The portion of the sidewalk where the woman with the dog stepped onto the grass was occupied by Donnelly and two other police officers in addition to two of the defendants. To the extent that the sidewalk was blocked, the evidence is insufficient to establish that it was the defendants alone, rather than the defendants and the police officers, who blocked the sidewalk. Additionally, even though this pedestrian

stepped onto the grass with the dog, she was hardly inconvenienced even slightly, let alone obstructed in her progress. No one attempted to stop her, and she proceeded past the defendants without incident. The state had to show that while intending to impede a lawful activity, the defendants obstructed pedestrian traffic. See *State* v. *Scott*, 83 Conn. App. 724, 730, 851 A.2d 353 (2004). One is not obstructed in this sense simply because one is obliged to step around another person who is also on the sidewalk. See *State* v. *Anonymous (1976-9)*, 33 Conn. Sup. 93, 98, 363 A.2d 772 (1976).

Whether the other two pedestrians might have been obstructed cannot be determined from the evidence. Where they were headed was never revealed, Donnelly testified that he did not know where they were headed, and there is no evidence that they actually attempted to walk along the sidewalk.

Deborah Camerota, referred to in the majority opinion, was considered by the state to have been among the protesters.

I would reverse the judgment.