STATE OF CONNECTICUT *v.* RONALD LITTLE
(AC 30967)

Bishop, Harper and Pellegrino, Js.

Argued October 29, 2010—officially released March 15, 2011

*Neal Cone,* senior assistant public defender, for the appellant (defendant).

*Nancy L. Chupak,* senior assistant state's attorney, with whom, on the brief, were *John C. Smriga,* state's attorney, and *Tatiana A. Messina,* assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Ronald Little, appeals from the judgment of conviction, rendered after a trial to the court, of failing to comply with the registration requirements imposed by General Statutes § 54-252 (a) on persons who have committed a sexually violent offense. First, the defendant claims that there was insufficient evidence to support his conviction because the evidence was insufficient for the court to conclude that (1) he was a sexually violent offender required to register under § 54-252 and (2) he failed to comply with the registration requirements of § 54-252. Second, the

defendant claims that the retroactive application of § 54-252 is unconstitutional under the constitution of Connecticut. We disagree and affirm the judgment of the trial court.

The record reveals the following facts and procedural history that are relevant to our resolution of the defendant's appeal. In 1991, the defendant pleaded guilty to sexual assault in the third degree in violation of General Statutes § 53a-72a and was sentenced to two years of imprisonment, execution suspended, with three years of probation. In compliance with the requirements of § 54-252, the defendant first registered with the sex offender registry unit of the state police (registry) on July 9, 1999. Pursuant to § 54-252, a person required to register under the statute must complete and return forms to verify his or her address during the registration period. The registry sends address verification forms directly to registrants every ninety days, which the registrants must complete and return within ten days. The defendant complied with these registration and reporting requirements until June, 2007, when he failed to return an address verification form. Additional correspondence was sent to the defendant's last known address on July 3 and 14, 2007, in an attempt to obtain the defendant's compliance. The defendant did not respond to this additional correspondence. The registry did not receive any correspondence from the defendant until December 4, 2007, when he sent an e-mail to the registry that stated: "I need to update my registry. If you can, send the letter to my new address." The e-mail provided a new address at which the defendant was residing. By reply e-mail, a detective with the registry informed the defendant that he needed to send his information in writing to the registry. Subsequently, the registry sent a verification form to the new address, which the defendant returned. The defendant has since remained in compliance with registry requirements.

On January 12, 2008, the defendant was charged by substitute information with failing to register as a sex offender in violation of § 54-252 (a). Specifically, the information charged that the defendant, who had previously been convicted of a sexually violent offense and who resided in Connecticut, "failed to complete and return forms mailed to his address to verify his residence address . . . ." After a trial to the court, the defendant was found guilty of failing to comply with the registration requirements of § 54-252. The court sentenced the defendant to three years of imprisonment, execution suspended, and three years of probation with the special condition that he complete 100 hours of community service for each year he is on probation. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant's first claim is that there was insufficient evidence to support his conviction. The defendant challenges the sufficiency of the evidence to support his conviction in two respects. First, the defendant claims that the evidence was insufficient to establish that he was a sexually violent offender subject to the registration requirements of § 54-252. Second, the defendant claims that even if the evidence was sufficient to establish that he was subject to the registration requirements of § 54-252, there was insufficient evidence for the court to conclude that he failed to comply with those requirements.

Before addressing each of these claims in turn, we set forth our standard of review when addressing the sufficiency of the evidence to support a criminal conviction. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine

whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . We note that the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [finder of fact] to conclude that a basic fact or an inferred fact is true, the [finder of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Rosario*, 113 Conn. App. 79, 86, 966 A.2d 249, cert. denied, 291 Conn. 912, 969 A.2d 176 (2009).

"When there is conflicting evidence . . . it is the exclusive province of the court, as the trier of fact, to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Citations omitted; internal quotation marks

omitted.) *State* v. *Muckle*, 108 Conn. App. 146, 148–49, 947 A.2d 972, cert. denied, 288 Conn. 909, 953 A.2d 654 (2008).

## A

The first aspect of the defendant's sufficiency of the evidence claim is that there was insufficient evidence for the court to conclude that he was a violent sexual offender who was required to register under § 54-252. The defendant does not dispute that he previously pleaded guilty to third degree sexual assault in violation of § 53a-72a, but, rather, contends that there was insufficient evidence to establish that his conviction under § 53a-72a qualified as a sexually violent offense for purposes of § 54-252.

The registration requirements of § 54-252 are only applicable to persons who have "been convicted . . . of a sexually violent offense . . . ." General Statutes § 54-252 (a). A sexually violent offense, as the term is used in § 54-252, includes a violation of "[§] 53a-72a, *except* subdivision (2) of subsection (a) of said section . . . ." (Emphasis added.) General Statutes § 54-250 (11). Section 53a-72a provides in relevant part: "(a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such other person to fear physical injury to himself or herself or a third person, or (2) engages in sexual intercourse with another person whom the actor knows to be related to him . . . ." Thus a conviction under § 53a-72a (a) (1) would qualify as a sexually violent offense for purposes of § 54-252, but a conviction under § 53a-72a (a) (2) would not. Although the defendant does not dispute that he pleaded guilty to third degree sexual assault in

violation of § 53a-72a, he contends that the evidence was insufficient for the court to conclude that he had been convicted under the subsection of § 53a-72a that constitutes a sexually violent offense under § 54-252.

After a careful review of the record, we conclude that the defendant conceded that he had been convicted of a sexually violent offense and waived his right to require proof of that element of the offense. The following additional facts are relevant to this claim. At the beginning of the defendant's criminal trial, the prosecutor asked that the court "take judicial notice of the fact that the defendant was convicted in 1991 of a sexually violent offense." Defense counsel did not object to this request. The court then stated: "The state's exhibit 1 . . . indicates [that the defendant was convicted] of sexual assault in the third degree. The court has reviewed the statute, and the court will take judicial notice of the fact that sexual assault in the third degree does fit the definition of a sexually violent offense for purposes of the registration statute." Defense counsel did not object to this ruling. In the state's summation, the prosecutor stated: "As Your Honor well knows, the first element of failure to register is [that] the defendant was convicted of a crime. The second element is that he was required to register. The third element is that he was released into the community. And the fourth element is that the defendant failed to register. Element number one, two and three, Your Honor, at this point are not disputed." In the defendant's summation, defense counsel stated: "As the state indicated, the only issue presented to the court, or, I believe, an issue of fact that the court has to make a determination, is that if [the defendant] failed to complete and return the form mailed to him to verify his address." Ultimately, the court found that "the defendant was convicted in 1991 of sexual assault in the third degree in violation of . . . [§] 53a-72a. This fact and [the] first element of the

offense charged was not really in dispute and was proven through the state's exhibit 1, the testimony of [state police] Trooper [Rupert] De Los Reyes and in fact was conceded by the defendant."

Although this court and our Supreme Court have "acknowledged that the state usually must prove all undisputed elements of a crime beyond a reasonable doubt, an element may be conceded by the defendant . . . and we have not required an express waiver of the right to require the state to prove each element of a crime." (Citation omitted.) *State* v. *Cooper*, 38 Conn. App. 661, 669–70, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996). Moreover, "waiver of the right to require the state to prove each element of a crime may be made by counsel and may be inferred from the absence of an objection." Id., 670.

In *Cooper*, this court held that the defendant, who had been convicted of operating a motor vehicle while under the influence of intoxicating liquor, had waived his right to require the state to prove that he was operating his vehicle on a public highway, which was an element of the crime charged. Id. We noted that a review of the record indicated that "proof of the public highway element clearly was not in dispute . . . ." Id. Specifically, we noted that "the state's attorney, in closing argument, argued that the evidence was uncontroverted that the defendant operated on a public highway. The defendant's attorney, in his summation, did not dispute that fact." Id., 668.

Our review of the record in the present case indicates that the issue of whether the defendant had been previously convicted of a sexually violent offense, which gave rise to the requirement that he register, was not in dispute at his trial and that he waived the state's burden of proving that element of the offense. As was

the case in *Cooper*, the prosecutor in the present case argued to the trier of fact that this element of the crime was uncontroverted. Additionally, in the present case, not only did defense counsel not dispute this fact but she explicitly affirmed the state's assertion by indicating that the only element in dispute was whether the defendant had failed to register. The defendant did not object to the state's request that the court take judicial notice of the fact that he had been convicted of a sexually violent offense to which the registry requirements applied, nor did he object to the court's finding that he had conceded this element. The defendant cannot be heard to claim on appeal that there was insufficient evidence to support a finding that he had committed a sexually violent offense to which the registry requirements applied when, at trial, he made affirmative representations to the prosecution and the court that he was not disputing that fact. See id., 670 ("[t]o allow the defendant to seek reversal now that his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state with that claim on appeal" [internal quotation marks omitted]). On this record, we conclude that the defendant waived his right to require the state to prove that he had been convicted of a sexually violent offense to which the registration requirements of § 54-252 applied.

Although we reject the claim raised on appeal because we conclude that the defendant waived his right to have the state prove that he had previously been convicted of a sexually violent offense to which the registration requirements apply, we nonetheless conclude, as an alternate ground on which to reject the claim, that the record contains sufficient evidence for the court to have found that he had previously been convicted of a sexually violent offense. The defendant offered a copy of his sex offender registration form as a full exhibit at trial. This form was signed by the

defendant when he first registered as a sex offender. The first section of the form contains the defendant's name and personal information. The next section of the form reads, "[t]he person named above was convicted or found not guilty by reason of mental disease or defect of: ([check] all that apply)." The form then contains two boxes listing various offenses that would give rise to the requirement that the offender register with the registry. The second box contains the heading, "a sexually violent offense, such as one or more of the following crimes." Within this box are various statutory provisions, the violation of which constitutes a sexually violent offense. Next to each statutory provision listed in this box is an area for the party filling out the form to place a check mark. The individual who filled out the defendant's form placed a check mark in this box in the area next to the statutory provision reading, "[§] 53a-72a; except (a) (2)," thereby indicating that the individual named above, i.e., the defendant, had been convicted of a sexually violent offense for violating the provisions of § 53a-72a, except (a) (2). The defendant's signature appears on the bottom of the form.

Additionally, De Los Reyes testified that the defendant was required to register because "he falls under the general guidelines to register as a sex offender in the state of Connecticut. And that particular crime is—is considered a crime of sexual violence which carries a mandatory lifetime registration."

Construing this evidence in a light most favorable to sustaining the court's finding, we conclude that the court reasonably could have found that the defendant had previously been convicted of a sexually violent offense. The court reasonably could have concluded from the defendant's sexual offender registration form that he had previously been convicted under the subsection of § 53a-72a that constituted a sexually violent

offense under § 54-252. Moreover, De Los Reyes testified specifically that the defendant was required to register because he had previously been convicted of a sexually violent offense. Thus, while our review of the record leads us to conclude that the defendant waived his right to require that the state prove that he had previously been convicted of a sexually violent offense, we nonetheless acknowledge that the record contains sufficient evidence to support the court's finding.

B

The second aspect of the defendant's claim regarding the sufficiency of the evidence to support his conviction is that the evidence was insufficient for the court to conclude that he had failed to comply with the registration requirements of § 54-252. We disagree.

The state offered ample evidence, including the testimony of De Los Reyes, that the defendant did not return the June, 2007 verification form as required by § 54-252 and did not contact the registry to notify it of his address change until his December, 2007 e-mail. The defendant, however, testified that at the end of May or at the start of June, 2007, he went in person to the state police barracks and provided a trooper with a new address. The defendant testified that the trooper told him he would be contacted. Additionally, the defendant and his wife testified that after he spoke with the trooper, they checked the sex offender registry website and saw that the defendant's address had been changed. The state offered evidence, however, that the website indicated that the defendant was out of compliance with the registry requirements. In its thorough and well reasoned decision, the court noted that the defendant was "evasive" and "defensive" and that his testimony was "internally inconsistent." Ultimately, the court chose not to credit the testimony of the defendant or the defendant's wife.

The defendant's claim regarding the sufficiency of the evidence to support the court's finding that he failed to comply with the registry requirements essentially amounts to a challenge to the court's credibility determinations. As previously noted, it is the sole province of the trial court, as fact finder, to make determinations regarding the credibility of witnesses and to weigh conflicting evidence. See, e.g., *State* v. *Muckle*, supra, 108 Conn. App. 148. On appeal, "[i]t is . . . not our function to retry the case or to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *Clement* v. *Clement*, 34 Conn. App. 641, 650, 643 A.2d 874 (1994). In the present case, the court's findings were supported by ample evidence in the record, and the defendant's claim is without merit.

## II

The defendant's next claim is that the retroactive application of § 54-252 is a violation of his rights under the constitution of Connecticut. Although the constitution of Connecticut does not contain an express prohibition of ex post facto laws, the defendant contends that the due process protections embodied in article first, §§ 8 and 9, prohibit the retroactive application of the sex offender registry requirements. We conclude that the defendant has failed to demonstrate that his rights under the constitution of Connecticut have been violated by the retroactive application of § 54-252.

We begin with a brief discussion of the history of the sex offender registry requirements as set forth by our Supreme Court. "[Section 54-252] is one provision of Megan's Law, which is codified in chapter 969 of the General Statutes, the intent of which was to alert the public by identifying potential sexual offender recidivists when necessary for public safety. . . . The seriousness of the harm that sex offenders' actions cause to society and the perception, supported by some data,

that such offenders have a greater probability of recidivism than other offenders . . . combined to prompt the enactment of numerous laws across the country directed specifically toward persons convicted of crimes involving sexual conduct. . . . Chapter 969, entitled Registration of Sexual Offenders; General [S]tatutes § 54-250 et seq.; is such an enactment. Prior to the enactment of Megan's Law, the law imposed a registration requirement only on specified sex offenders who were convicted on or after January 1, 1995. See General Statutes (Rev. to 1995) § 54-102r. The law was broadened in 1997 to include all convicted sex offenders. . . . The current statutory scheme imposes registration requirements based on four classifications: (1) the victims are minors or the sexual offenses are nonviolent; General Statutes § 54-251; (2) the sexual offenses are violent; General Statutes § 54-252; (3) the sexual offense was committed in another jurisdiction; General Statutes § 54-253; or (4) a felony was committed for a sexual purpose. See General Statutes § 54-254." (Citations omitted; internal quotation marks omitted.) *State* v. *Waterman,* 264 Conn. 484, 490, 825 A.2d 63 (2003). As noted previously, the defendant was convicted of sexual assault in the third degree in 1991. Thus, the defendant contends that because the conduct that led to his conviction occurred prior to the enactment of Megan's Law, the requirement that he register as a sex offender violates his rights under the constitution of Connecticut.

As an initial matter, we note that although the defendant did not assert his ex post facto argument before the trial court, he has affirmatively requested review of his claim under the doctrine set forth in *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Under *Golding,* a defendant can "prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate

to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 360, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

First, given the nature of the defendant's claim, we conclude that the record before us is adequate for review. Second, because the defendant has alleged that the application of the sex offender registry requirements violates the constitution of Connecticut he has satisfied the second prong of *Golding*. Therefore, the defendant's claim is reviewable under *Golding*. As will be discussed, however, the defendant's claim fails under the third prong of *Golding* because he has not established that the alleged constitutional violation exists.

The constitution of Connecticut does not contain a provision expressly prohibiting ex post facto laws. See, e.g., *Abed* v. *Commissioner of Correction*, 43 Conn. App. 176, 183, 682 A.2d 558, cert. denied, 239 Conn. 937, 684 A.2d 707 (1996). Although the original committee draft of article first, § 10, of the constitution of Connecticut, now article first, § 9, contained an ex post facto clause, the delegates to the constitutional convention of 1818 revised the committee draft and omitted entirely the ex post facto clause. See W. Horton, The Connecticut State Constitution: A Reference Guide (1993) p. 62. Despite the fact that the constitution of Connecticut does not contain an express ex post facto clause, the

defendant contends that a protection against ex post facto laws can be implied from the due process protections embodied in article first, §§ 8 and 9.

Our Supreme Court has recognized that certain rights are implied in our constitution even in the absence of an express provision relating to those rights. See, e.g., *State* v. *Ross*, 230 Conn. 183, 246–47, 646 A.2d 1318 (1994) (concluding that although constitution of Connecticut does not contain express prohibition of cruel and unusual punishment, such prohibition can be implied from article first, §§ 8 and 9), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995); *Kohlfuss* v. *Warden*, 149 Conn. 692, 695, 183 A.2d 626 (holding that despite lack of express provision, constitution of Connecticut impliedly contains protection against double jeopardy as part of due process clause of article first, § 9 [now § 8]), cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962). Therefore, the defendant is correct in his assertion that the mere absence of an express provision in the constitution of Connecticut protecting a certain right does not necessarily mean that such a right is not protected by our constitution. This court has held, however, that article first, §§ 9 and 13, when read in conjunction, do not create an ex post facto clause in the constitution of Connecticut. *Abed* v. *Commissioner of Correction*, supra, 43 Conn. App. 183. Although acknowledging this court's holding in *Abed*, the defendant contends that article first, §§ 8 and 9, should be read to prohibit ex post facto laws and that such prohibition renders the requirement that he register as a sex offender unconstitutional. We are not persuaded.

We need not determine whether the defendant is correct in his assertion that an ex post facto provision is implied in article first, §§ 8 and 9, of the constitution of Connecticut, because even if we assume, without deciding, that such a provision exists, the defendant

has failed to demonstrate by means of an analysis under *State* v. *Geisler*, 222 Conn. 672, 610 A.2d 1225 (1992), that any protection against ex post facto laws allegedly provided for in the constitution of Connecticut is broader than that provided for in the federal constitution. Because our Supreme Court has held that Megan's Law is not punitive and therefore does not violate the ex post facto clause of the federal constitution; *State* v. *Kelly*, 256 Conn. 23, 94–95, 770 A.2d 908 (2001); the defendant must establish not only that the constitution of Connecticut contains a prohibition of ex post facto laws but that such prohibition is broader than that encompassed within the federal constitution.

In *Kelly*, our Supreme Court addressed the issue of whether the registration requirements of Megan's Law violated the ex post facto clause of the federal constitution. The court relied heavily on the reasoning of the United States Court of Appeals for the Second Circuit in *Doe* v. *Pataki*, 120 F.3d 1263, 1285 (2d Cir. 1997), cert. denied, 522 U.S. 1122, 118 S. Ct. 1066, 140 L. Ed. 2d 126 (1998), in which the court held that New York's sex offender registry statute was not punitive and, therefore, did not violate the ex post facto clause of the federal constitution. *State* v. *Kelly*, supra, 256 Conn. 92–94. In *Doe*, the court applied a two part test in making its determination, examining first whether the legislature intended the statute to be punitive and second, whether even if the statute was not intended to be punitive, it was nonetheless "so punitive either in purpose or effect as to negate that intention." (Internal quotation marks omitted.) *Doe* v. *Pataki*, supra, 1274. Our Supreme Court applied this two part test to Connecticut's sex offender registry requirements and held that the statute was regulatory and not punitive, and, therefore, did not violate the ex post facto clause of the federal constitution. *State* v. *Kelly*, supra, 95.

In *State* v. *Waterman,* supra, 264 Conn. 484, our Supreme Court again discussed the regulatory nature of Megan's Law. In *Waterman,* the defendant alleged that the trial court did not have jurisdiction to make a finding that he was required to register as a sex offender because the finding was made several weeks after the court sentenced him. Id., 488–89. The defendant claimed that the registration requirement was a "punitive sanction constitut[ing] a substantive change in the judgment," which the court did not have jurisdiction to impose after he had started serving his sentence. (Internal quotation marks omitted). Id., 489. Our Supreme Court discussed *Kelly* at length as well as recent federal cases that "underscore[d] the vitality" of its holding in *Kelly* regarding the regulatory nature of Megan's Law. Id., 493. Ultimately, the court reaffirmed its holding in *Kelly,* holding that Megan's Law was not a punitive statute, and concluded that "[b]ecause [the] regulatory requirements [of Megan's Law] are ministerial," the trial court had jurisdiction to "inform the defendant of his [obligation]" to register even after he had been sentenced. Id., 497.

In light of the clear precedent from our Supreme Court holding that the sex offender registry requirements are regulatory and do not violate the federal constitution, the defendant, to succeed on his claim, must establish that the protection against ex post facto laws that he claims is implied in our constitution is broader than the protection provided in the federal constitution. Specifically, because our Supreme Court has repeatedly held that Megan's Law is a regulatory statute, in order to succeed, the defendant must demonstrate that the ex post facto protection that he alleges is contained in the constitution of Connecticut prohibits the retroactive application of regulatory statutes. He has failed to do so.

Our careful review of the defendant's brief and arguments reflects that, although he has provided a detailed analysis in an effort to demonstrate that the constitution of Connecticut embodies an ex post facto protection, he has not attempted to demonstrate that such protection exceeds that embodied in the federal constitution. Rather, through a detailed *Geisler* analysis, he urges this court to adopt the reasoning of the dissenting justices in *Smith* v. *Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003), who concluded that Alaska's sex offender registry requirements were punitive; id., 113 (Stevens, J., dissenting); id., 118 (Ginsburg, J., dissenting); as well as the reasoning of the Indiana Supreme Court in *Wallace* v. *State*, 905 N.E.2d 371 (Ind. 2009), in which the court reached the same conclusion analyzing Indiana's version of Megan's Law under the constitution of Indiana. As discussed, however, our Supreme Court has repeatedly concluded that Megan's Law is regulatory, not punitive in nature.[1] As an intermediate appellate court, we are bound by our Supreme Court's conclusion that Megan's Law is a regulatory statute. See, e.g., *James* v. *Valley-Shore Y.M.C.A., Inc.*, 125 Conn. App. 174, 184, 6 A.3d 1199 (2010) ("It is axiomatic that this court, as an intermediate body, is bound by the decisions of our Supreme Court. . . . Accordingly, [w]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within

[1] In addition to our Supreme Court's conclusions in the *Kelly* and *Waterman* cases regarding the regulatory nature of Megan's Law, both our Supreme Court and this court subsequently have acknowledged that Megan's Law is regulatory, not punitive in nature. See *State* v. *Pentland*, 296 Conn. 305, 314, 994 A.2d 147 (2010) ("the requirement to register as a sex offender under Megan's Law is regulatory rather than punitive"); *State* v. *Arthur H.*, 288 Conn. 582, 590, 953 A.2d 630 (2008) ("[t]he requirement to register as a sex offender is regulatory, rather than punitive, in nature"); *State* v. *Pierce*, 69 Conn. App. 516, 528, 794 A.2d 1123 (2002) ("Connecticut's Megan's Law, as to registration, was enacted by the legislature as a regulatory measure, not a punitive one, and was not intended as punishment"), rev'd on other grounds, 269 Conn. 442, 849 A.2d 375 (2004).

our province to reevaluate or replace those decisions." [Citation omitted; internal quotation marks omitted.]). This precedent is no less binding because the defendant in this case is alleging a violation of the constitution of Connecticut, rather than the federal constitution.

We conclude that even if we assume, without deciding, that the constitution of Connecticut contains an implied protection against ex post facto laws, the defendant has failed to demonstrate in any way that such protection exceeds that provided for in the federal constitution.[2] Therefore, the defendant has not demonstrated that his rights under the constitution of Connecticut were violated by the requirement that he register as a sex offender under § 54-252. Because the defendant has not demonstrated that a constitutional violation clearly exists, his claim fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[2] In reaching this conclusion, we are mindful that our Supreme Court has held that the absence of an express provision in the constitution of Connecticut "strongly suggests" that any protection that may be implied in our constitution "mirrors, rather than exceeds, the federal constitutional protection." (Internal quotation marks omitted.) *State* v. *Michael J.*, 274 Conn. 321, 350, 875 A.2d 510 (2005). Moreover, that suggestion is strengthened when, as with the ex post facto clause, "a historical review reveals the exclusion of a textual ban . . . from the constitution of Connecticut was not the result of oversight but, rather, the product of a conscious decision by our constitutional forebears." Id., 350–51.